**FOLEY v. REYNOLDS, Collector of Internal Revenue.**

**Civil Action No. 534.**

District Court, D. Minnesota, Third Division.

Nov. 17, 1944.

Ira C. Oehler, of St. Paul, Minn., for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U.. S. Atty., both of St. Paul, Minn., for defendant.

NORDBYE, District Judge.

The facts are stipulated. The question is whether plaintiff was entitled to a bad debt deduction of $6,666.02 which he took in his income tax report for 1938. The pertinent facts appear to be as follows:

Plaintiff was the mortgagee [1] of certain St. Paul, Minnesota, improved real estate upon which the real estate taxes for the years 1928 to 1935, incl., were not paid. Foley Brothers Building Company was the mortgagor. On February 4, 1936, the State of Minnesota initiated tax foreclosure proceedings against the property for non-payment of the 1929 and 1930 taxes. No redemption from this tax sale was made or attempted by plaintiff or the mort- gagor, and the statutory right to do so expired on February 26, 1937. The State of Minnesota obtained the property for the taxes due.

On July 23, 1937, a special session of the Minnesota Legislature enacted Chapter 88, Extra Session Laws of 1937, Mason's Minn. Stat., Supp. of 1938, Sec. 2176-26, which, in effect, provided that persons whose property was forfeited to the State of Minnesota for non-payment of taxes for the years including 1929 and 1930 could redeem from the tax sale any time prior to March 1, 1938, by paying three-fifths of the aggregate tax liability at the time of the tax forfeiture.

Plaintiff herein was president of the mortgagor, and on December 23, 1937, he presided at a meeting at which the mortgagor adopted a resolution declaring that, because the company was "clearly insolvent" and "has no funds or prospect of funds wherewith to avail itself of the right of redemption respecting the real estate" herein, the secretary and president of the company are "directed and empowered" to transfer all the company's assets and rights to the mortgagee herein for application on the unpaid balance of the mortgage and then "to dissolve this company in the manner provided by law." On December 29, 1937, in pursuance of the resolution, there was assigned to the mortgagee certain notes, accounts, and some cash and also "all of its rights, if any, to the redemption of" the mortgaged real estate. The assignment further recited: "That the purpose of this assignment is to enable said Trustees to collect as much as possible of the indebtedness owed them by said Building Company. That as the money is collected by said Trustees the same shall be applied in the reduction of said indebtedness." The property assigned included "* * * a note of Six Thousand Forty-four and 40/100 Dollars ($6044.40) by the Volkszeitung Daily Incorporated to the Foley Brothers Building Company which note was dated January 16th, 1937, and on which One Thousand One Hundred Forty-four and 20/100 Dollars ($1144.20) principal and Sixty Dollars ($60) interest has been paid, an open account owed by the Northern States Envelope Company, a corporation, to the Foley Brothers Building Company in the amount of Nine Hundred

---

[1] Although a trust estate was the mortgagee, plaintiff may be considered such for the purposes of this case since his interest is the only one involved herein.

Six and 76/100 Dollars ($906.76) and Sixty and 81/100 Dollars ($60.81) in cash."

To the extent, if any, which the assets assigned, outside of the cash, provided any funds to apply on the mortgage does not appear from the stipulated facts. It does appear that the original mortgage was in the sum of $40,000, and at the time of the assignment it had been reduced to approximately $27,000. Plaintiff's share of the unpaid principal amounted to approximately $6,197.71. No redemption was made of the property by either the mortgagor or mortgagee prior to March 1, 1938, when the right of redemption ceased under the special legislation referred to.

Plaintiff deducted as a bad debt from his 1938 gross income the amount due him on the mortgage. Defendant disallowed this deduction, however, declaring that the debt should have been deducted in 1937 and not in 1938, and he levied a deficiency assessment against the plaintiff. Plaintiff paid this assessment, together with $80.94 interest, and filed a claim for refund. When that claim was disallowed, this action was instituted. The correctness of the amount sought here and of the deficiency assessment are not now in issue. There also is no dispute as to the debt's being a bad debt. The only issue is: Was the bad debt deductible in 1937 or 1938?

Section 23(k) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 23(k), reads as follows:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(k) Bad debts.

"(1) General rule. Debts ascertained to be worthless and charged off within the taxable year. \* \* \*"

■ Both parties recognize that the loss must be deducted for the year in which the debt's worthlessness is ascertained. This ascertainment must be made by the taxpayer. But likewise it must be a reasonable ascertainment. Rassieur v. Commissioner of Internal Revenue, 8 Cir., 129 F.2d 820, 827. Necessarily, each case must turn on its own factual situation. While the real estate herein was forfeited to the State in February, 1937, the passage of the special legislation revived the right of redemption so that on July 23, 1937, and until March 1, 1938, the property could be repurchased from the State upon payment of three-fifths of the tax liability at the time of forfeiture. Upon the passage of this legislation, the status of the right of redemption reverted to that which existed prior to the date of forfeiture, with the exception, however, that the redemption rights were more favorable to the taxpayer. While the evidence did not disclose the true market value of the property during the period in question, the stipulation does reflect a value for tax purposes of May 1, 1937, of $125,000, and as of May 1, 1938, $122,400. In each of these values, the improvements were placed at $95,000. It may also be noted that the mortgage itself required fire insurance to be carried on the buildings in the sum of $75,000.

■ Perhaps the most significant circumstance in determining when the debt became worthless is to be found in the conduct of the parties to the mortgage. Certainly, it is fair to find that as late as December 29, 1937, the mortgage was considered as having some value, and, in fact, did have value because on that date certain notes and accounts receivable and some cash were assigned to the mortgagee to apply on the debt. Moreover, it is fair to find that, in the opinion of the mortgagees, the debt did not become valueless at that time. Indeed, it is significant that the trustees as mortgagees were sufficiently interested in the right of redemption so as to have that right assigned to them on December 29, 1937. Apparently, they had not abandoned all hope of recovering something further on the debt. True, the mortgagor was insolvent and was in no position to make redemption. But if we consider the average, prudent person with property assessed at approximately $125,000 and holding a debt against that property in the sum of $27,000, is it not reasonable to assume that, with the right of redemption inuring to him which would exist for some three months, he would entertain a reasonable hope under these circumstances that some further recovery might be had to apply on the debt? The stipulation does not indicate the amount of the taxes that had been assessed for the years in question. But notwithstanding the absence of this information, it is fair to assume from the conduct of the parties that the mortgage debt had not been charged off by plaintiff in 1937. Moreover, it does not appear that in 1937 the receivables which had been assigned to the trustees had been liquidated into cash and applied on the mortgage. While the redemption of the prop-

erty might seem remote under the circumstances, the fact remains that on December 29, 1937, the mortgagees in apparent good faith obtained the mortgagor's assignment of that right and nothing appears in the record to negate the taxpayer's contention that the ascertainment of the debt to be worthless did not come into being until 1938. The substantial right to redeem property assessed on the tax rolls in a sum over four times the amount of the indebtedness cannot be brushed aside as fantastic or fanciful. Many a parcel of land has been sold or traded—true, sometimes under fortuitous circumstances—during the tax redemption period and substantial salvage effected. The stipulated facts herein strongly induce the conclusion that a reasonably prudent man would have concluded that the mortgage debt was not worthless, at least until a reasonable time after January 1, 1938. When we consider that the assignment of the receivables and that the right of redemption was not given until December 29, 1937—two days before January 1, 1938—and that on the day of the assignment the debt was not worthless, no sound reason is suggested why the plaintiff did not exercise a reasonable ascertainment of the worthlessness of the debt when he concluded that such event took place in the year 1938. As stated in Rassieur v. Commissioner of Internal Revenue, supra, 129 F.2d page 827:

" * * * The question as to the notes is when taxpayer reasonably and honestly 'ascertained' the stock, back of the notes, was worthless. This *ascertainment* must be by the taxpayer. * * * Necessarily, there is usually a range of time after actual worthlessness within which a taxpayer may so *ascertain*."

The range of time between December 29, 1937, and January 1, 1938, surely is not so unreasonable for such ascertainment in light of the admitted circumstances herein. The undisputed facts and circumstances fairly justify a finding that plaintiff has sustained the burden of proof, not only as to the time when the debt was declared worthless by him, but also as to the reasonableness of such ascertainment. It is not suggested that plaintiff acted dishonestly or in bad faith in doing that which he did, and there is sufficient evidence to support the reasonableness of his determination. A reasonable and practical construction of the factual situation should be accorded the taxpayer under the circumstances herein.

It may not be amiss to point out that the Commissioner of Taxation of the State of Minnesota arrived at the same conclusion as to this identical taxpayer under the same identical facts in determining that, under the Minnesota income tax law, the loss to this taxpayer took place in 1938. He stated in part:

"I have given this matter careful consideration, and while the contentions of the Division as presented have some merit, I am disposed without further discussion to sustain the views of taxpayer that Chapter 88 did in effect, and independent of the prior forfeiture, revive the right of repurchase, which inured to the benefit of the mortgagee, and there was some hope of realizing thereon until again extinguished by statutory limitation on March 1, 1938. That taxpayer did not.or could not exercise the right of foreclosure does not appear to be important. The fact remains that this right was in existence on March 1, 1938, and is a sufficient circumstance in my judgment to warrant the conclusion that taxpayer's loss is properly deductible in that year."

True, such views are not binding or controlling on this Court. But they at least reflect the views of one who is presumed to have some judgment as to what a reasonably prudent man would have done if he had been in plaintiff's position and confronted with the problem of determining the time when the debt should be deemed worthless.

It follows, therefore, from the views hereinbefore expressed that the Commissioner erred in excluding the deduction of $6,666.02 from the plaintiff's 1938 income and that plaintiff is entitled to judgment as prayed for in his complaint.

Findings of fact and conclusions of law may be presented by the plaintiff. An exception is allowed to the defendant.